**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DELMER R. LINDSEY,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-0279-N** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject case has been referred to the United States Magistrate Judge. Before the Court are the Plaintiff's *Motion for Summary Judgment*, filed June 7, 2004, and the Defendant's *Motion for Summary Judgment*, filed August 6, 2004. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the Plaintiff's motion for summary judgment be **DENIED** and that the Defendant's motion for summary judgment be **GRANTED**. Accordingly, the case should be **AFFIRMED**.

## I.   BACKGROUND[1]

### A.   *Procedural History*

Delmer R. Lindsey ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act. On June 6, 2001, Plaintiff filed an application for disability benefits. (Tr. at 89.) Plaintiff claimed he became disabled on June 26, 1997, due to

---

[1] The following background facts come from the transcript of the administrative proceedings, which is designated as "Tr."

diabetes, diabetic neuropathy affecting his legs and feet, and arthritis in his hips, knees, and arms. (Tr. at 97.) Plaintiff's application was denied both initially and on reconsideration. (Tr. at 45-56.) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 57.) A hearing, at which Plaintiff appeared and testified, was held on January 22, 2003. (Tr. at 10.) On February 24, 2003, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 10.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 3-5.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on February 10, 2004.

**B.   *Factual History***

### 1.   Plaintiff's Age, Education, and Work Experience

Plaintiff was born on June 3, 1946. (Tr. at 14.) At the time of the hearing before the ALJ, he was 56 years old. *Id*. He graduated high school and has past relevant work experience as a plant maintenance worker. (Tr. at 98.) Plaintiff stopped working on June 26, 1997. (Tr. at 97.)

### 2.   Plaintiff's Medical Evidence

Although Plaintiff's alleged onset of disability is June 26, 1997, the medical evidence in the record begins on July 1, 1996. (Tr. at 196.) On that date, Plaintiff was seen by Dr. Alford for problems with his feet and legs. *Id*. Plaintiff reported that his heels were hurting and that he was experiencing sharp pain in his toes. *Id*. Dr. Alford noted that Plaintiff had a sensation in his right foot and could not work overtime if it involved working on his feet. *Id*. Dr. Alford also noted that Plaintiff had good vibration sense. *Id*. In the assessment, Dr. Alford noted that Plaintiff had been diagnosed with diabetes in 1990 and was aware that he had diabetic

neuropathy. *Id*. As a result, Dr. Alford recommended that Plaintiff increase control of blood sugar levels with Glucophage. *Id*.

On December 12, 1996, Plaintiff was seen by Dr. Alford after hurting his ankle and leg and pulling a muscle while carrying a load of firewood. (Tr. at 185.) Dr. Alford noted that Plaintiff had abrasions on his right calf, a contusion in his left leg, and increased pain in his left hip. *Id*. A radiological exam on December 30, 1996, showed a moderate degenerative change in Plaintiff's right ankle. (Tr. at 182.)

In February of 1997, Plaintiff underwent a neurological evaluation by Dr. Todd A. Marist for burning discomfort, numbness, and soreness in his feet. (Tr. at 180.) Dr. Marist noted that Plaintiff had a decreased sensation to pinprick and temperature in both feet, but Plaintiff showed no overt tenderness in the feet to palpation. (Tr. at 180.) Plaintiff also had good peripheral pulses. *Id*

On June 26, 1997, Plaintiff was seen by Dr. Alford. Plaintiff claimed that his diabetic neuropathy had gotten worse and that he was unable to sleep or go back to work. (Tr. at 179.) Plaintiff also stated that he had stopped taking his medication for neuropathy because it was not working. *Id*.

The record contains a July 2, 1997 letter concerning Plaintiff's medical status. (Tr. at 178.) Dr. Alford's letter stated that Plaintiff's diabetes had created a painful peripheral neuropathy. *Id*. Dr. Alford noted that Plaintiff was unable to stand on his feet for extended periods of time and that nerve damage had affected Plaintiff's sense of position. *Id*. In conclusion, Dr. Alford recommended that Plaintiff "be considered for early retirement." *Id*.

On October 17, 1997, a Physician's Report in Plaintiff's disability pension application for Good Year Tire and Rubber was completed by Dr. Alford. (Tr. at 170.) The report stated

that Plaintiff had been diagnosed with adult onset diabetes, diabetic neuropathy affecting his legs and feet, and arthritis in his hip.  *Id*.  Plaintiff had complained of pain in his lower extremity and feet, pain in his left hip from arthritis and painful neuropathy.  *Id*.  Plaintiff also complained of lacking a sense of balance and increased pain in his feet when standing for extended periods of time.  *Id*.  Dr. Alford found that Plaintiff had decreased sensation and proprioception in his feet. *Id*.  The report also states that Dr. Marist confirmed Plaintiff's diagnosis.  *Id*.  Lastly, the report notes that Plaintiff was taking the following medications: 1) Elavil, Neprontin, and Amitriptyline for neuropathic pain; 2) Naproxen for back pain; and 3) Glucophage and Micronase for diabetes. *Id*.

During a follow-up visit on December 4, 1997, Plaintiff complained of numbness in his fingers after performing "hard work."  (Tr. at 164)  Dr. Alford noted that Plaintiff had "good sensation" and "good strength."  *Id*.  During a follow-up visit on March 4, 1998, Dr. Alford noted that Plaintiff had good Complete Blood Count tests, increased lipids, and was slowly losing weight.  (Tr. at 154.)

Plaintiff complained that he was not sleeping well during a May 28, 1998 follow-up to check his diabetes.  (Tr. at 152.)  During a follow-up visit on May 29, 1998, Dr. Alford noted, in his assessment, that Plaintiff had increased lipids and good triglycerides.  (Tr. at 151.)

On July 8, 1998, Plaintiff was seen by Dr. Alford.  (Tr. at 148.)  Plaintiff complained that the pain in his left hip recurred three weeks ago and was getting much worse.  *Id*.  Although Dr. Alford found that Plaintiff was experiencing pain, Dr. Alford found no tenderness in Plaintiff's hip.  *Id*.  In the assessment, Dr. Alford noted that Plaintiff had recurring lower back pain from his arthritis/degenerative joint disease (DJD) and a sleep anxiety issue.  *Id*.

The record contains a second letter by Dr. Alford written on January 1, 1999, concerning Plaintiff's medical status.  (Tr. at 147.)  Dr. Alford's letter stated that Plaintiff's diabetes had created a painful peripheral neuropathy.  *Id*.  Dr. Alford noted that Plaintiff was unable to stand on his feet for extended time periods and that nerve damage had affected Plaintiff's sense of position when he walked on uneven surfaces.  *Id*.  Dr. Alford concluded that the "disability [was] permanent" and would continue to get worse.  *Id*.

On August 9, 1999, Plaintiff was seen by Dr. Alford and complained that his Glucophage prescription was causing diarrhea.  (Tr. at 142.)  Dr. Alford advised patient to not use Glucophage for a few days.  *Id*.  During a follow-up on August 25, 1999, Dr. Alford noted that Plaintiff's diarrhea had stopped since Plaintiff had stopped taking Glucophage.  (Tr. at 141.)

During a follow-up on December 29, 1999, Dr. Alford found that Plaintiff had "good vibrating sense" and "good point protective sense".  (Tr. at 139.) Dr. Alford also prescribed Glucophage to Plaintiff.  *Id*.

The record contains a third letter by Dr. Alford written on January 1, 2000, concerning Plaintiff's medical status.  (Tr. at 130.)  Dr. Alford's letter stated that Plaintiff's diabetes had created a painful peripheral neuropathy.  *Id*.  Dr. Alford noted that Plaintiff was unable to stand on his feet for extended time periods and that nerve damage had affected Plaintiff's sense of position when he walked on uneven surfaces.  *Id*.  Dr. Alford concluded that the "disability [was] permanent" and would continue to get worse.  *Id*.

On May 3, 2001, Dr. Alford completed a consultative evaluation regarding Plaintiff's medical condition.  Plaintiff complained of diabetes mellitus, neuropathy, and hip pain.  (Tr. at 120.)  The evaluation reported no tenderness, masses, or displacement.  (Tr. at 122.)  Although the assessment was chronic neuropathy, balance and gait and sensory response were normal.

(Tr. at 123.)  In addition, the assessment noted that Plaintiff had poor control over his diabetes. *Id.*

On December 1, 2001, Dr. Alkarra completed a consultative evaluation regarding Plaintiff's medical condition.  (Tr. at 217.)  Plaintiff complained that he could not walk more than one block or stand for more than twenty minutes because there was decreased sensation in both lower extremities and feet.  *Id.*  Plaintiff also complained of right hip pain.  *Id.*  The evaluation reported normal gait and station and no signs of ataxia or unsteadiness.  (Tr. at 219.) Plaintiff was able to stand on his heels and toes, squat and rise, and bend over without difficulty. *Id.*  Plaintiff's straight-leg raising sign was negative.  *Id.*  During neurological tests, Plaintiff showed decreased pinprick sensation and temperature sensation from the mid lower leg down to the feet.  *Id.*  In addition, Plaintiff's ankles showed no reflexes, and there was a decreased range of motion in the cervical spine and right hip.  (Tr. at 219-20.)

### 3. <u>Hearing Testimony</u>

A hearing was held before the ALJ on January 22, 2003.  (Tr. at 20.)  Plaintiff appeared personally and was represented by a non-attorney representative.  *Id.*  Plaintiff testified that he was last employed in June 1997 as a pipe-fitter/welder/mechanic.  (Tr. at 24.)  Plaintiff stated that he stopped working because his doctor had determined that he was medically unfit to work. (Tr. at 32.)  Plaintiff testified that he had Type II diabetes which caused peripheral neuropathy in his feet, hands, and legs.  (Tr. at 25.)  Plaintiff also testified that he had arthritis in his ankles, knees, hips, elbows, back, shoulders, and neck.  *Id.*

Plaintiff claimed that he was having problems keeping his blood sugar down.  (Tr. at 25.) He stated that his blood sugar was high for about fifteen days of each thirty-day period, and on those days, he was unable to do anything.  (Tr. at 26.)  On other days, Plaintiff claimed he could

only perform light household work. *Id*. Plaintiff claimed that there was constant numbness and pain in his feet, and that he could walk comfortably for fifteen to thirty minutes at a time, depending on the terrain. *Id*. Plaintiff stated that he could walk comfortably for ten minutes on concrete. *Id*. Plaintiff also stated that he had peripheral neuropathy, which caused his feet and the ends of his fingers to go numb, and that his vision became blurry when his blood sugar was high. (Tr. at 28.)

Plaintiff further testified that he had arthritis which affected his lower back and, primarily, his hips. (Tr. at 30.) He stated that he had bone spurs in his ankles, feet, and knees. *Id*. He noted that the condition made it hard to get around or lift things. *Id*. Plaintiff claimed that he was only able to lift as much as a two-liter soft drink bottle without hurting himself. (Tr. at 31.)

During the day, Plaintiff performed basic household chores such as laundry and washing dishes. *Id*. Plaintiff also stated that he collected guns and went duck hunting three times in 2003. *Id*.

The Vocational Expert ("VE") classified Plaintiff's past relevant work as a plant maintenance worker as heavy and skilled. (Tr. at 37.) Taking into account Plaintiff's age, education, and numerous assumptions regarding Plaintiff's physical limitations, the ALJ asked the VE four hypothetical questions to determine whether Plaintiff could perform other work in the economy. (Tr. at 38.) The ALJ first asked whether or not a person in Plaintiff's medical condition could perform any past relevant work done by the claimant. *Id*. The VE concluded that an individual in Plaintiff's medical condition could not perform any of the past relevant work done by Plaintiff. *Id*. The VE further testified that Plaintiff's knowledge of hand tools and welding equipment, knowledge of mechanical principles and practices, the ability to read

blueprints, spec sheets, and manuals are transferable skills.  *Id.*  Second, the ALJ asked the VE if there was work in the national or regional economy where Plaintiff could use his transferable skills.  (Tr. at 39.)  The VE identified the jobs of electrical assembly and control panel assembly, stating that these were light, semi-skilled positions that Plaintiff could undertake.  *Id.*  The VE testified that there were twenty to forty thousand control assembly positions and four to ten thousand electrical motor tester positions in the nation.  (Tr. at 40.)  Third, the ALJ asked the VE whether an individual's occasional, but not frequent, loss of feeling in his hands would change her answer to the previous hypothetical question.  *Id.*  The VE answered that this additional limitation would not change her answer.  *Id.*  Fourth, when asked whether an individual's inability to appear regularly for work would affect her answers to the prior hypothetical questions, the VE stated that it would.  (Tr. at 40-41.)  The VE further stated that an individual taking frequent unscheduled breaks would also affect her answers to the prior hypothetical questions.  (Tr. at 41.)

**C.    ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on February 24, 2003.  (Tr. at 16.)  The ALJ noted that Plaintiff was insured for disability insurance benefits until the date of the decision.  (Tr. at 11.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, June 26, 1997.  *Id.*  In addition, the ALJ found that, at the time of the decision, Plaintiff had diabetes, diabetic neuropathy, and osteoarthritis, all severe impairments pursuant to 20 CFR § 404.1520(b).  (Tr. at 12.)  However, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment as of the date of the decision.  *Id.*

The ALJ found that although Plaintiff had medically determinable impairments which could reasonably cause the symptoms alleged, Plaintiff's testimony was not credible nor reasonably supported by the objective medical evidence to the extent that he alleged he was completely unable to perform any work prior to February 24, 2003.  (Tr. at 13, 15.)

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work with limitations.  (Tr. at 13.)  Although Plaintiff was unable to perform his past relevant work as a plant maintenance worker, the ALJ considered Plaintiff's residual functional capacity and relevant vocational characteristics in determining his disability status.  (Tr. at 39.) Because Plaintiff could not perform the full range of light work, the ALJ called the VE, who testified that given all factors, Plaintiff could perform the jobs of electrical accessory assembly, electrical control assembly, and electrical motor tester.  *Id*.  Moreover, the ALJ found that Plaintiff had transferable skills acquired from previous work experience and that there were numerous jobs in the national economy matching Plaintiff's skills and physical limitations.  (Tr. at 14.)

## II.   ANALYSIS

### A.   *Legal Standards*

#### 1.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

      2.   <u>Disability Determination</u>

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.   An individual who does not have a "severe impairment" will not be found to be disabled.

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.     If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.   The inquiry terminates if the Commissioner determines at any point

during the first four steps that the claimant is disabled or is not disabled.   *Id.*   Once the claimant

satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step

five to show that there is other gainful employment available in the national economy that the

claimant is capable of performing.   *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).   This

burden may be satisfied either by reference to the Medical-Vocational Guidelines of the

regulations or by expert vocational testimony or other similar evidence.   *Fraga v. Bowen*, 810

F.2d 1296, 1304 (5th Cir. 1987).   A finding that a claimant is not disabled at any point in the

five-step review is conclusive and terminates the analysis.   *Lovelace v. Bowen*, 813 F.2d 55, 58

(5th Cir. 1987).

**B.     Issues for Review**

Plaintiff presents the following issues for review:

1.     The ALJ's finding that Plaintiff can perform a limited range of light work is not supported by substantial evidence.   Specifically, the evidence does not show that Plaintiff can stand for four hours in an eight hour workday;

2.     The hypothetical question did not include all of Plaintiff's limitations; and

3.     According to the transcript, the Vocational Expert said Plaintiff's limitations were compatible with full-time work while the tape says Plaintiff's limitations were not compatible with full-time work.

**C.      Issue One: The Residual Functional Capacity for Limited Light Work**

Plaintiff alleges that the ALJ's finding that Plaintiff can perform a limited range of light work is not supported by substantial evidence.  (Pl. Br. at 1.)  Specifically, Plaintiff contends that the ALJ's finding that Plaintiff could stand for a total of four hours in an eight hour workday is not supported by the evidence in the record and Plaintiff's testimony.  (Pl. Br. at 7.)

Residual functional capacity is defined as the most that a person can still do despite recognized limitations.  20 C.F.R. § 404.1545.  "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p.  "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  An ALJ may consider an individual to have no limitation or restriction with respect to a functional capacity when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction.  SSR 96-8p.  An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.  *Id.*

In assessing Plaintiff's ability to perform work-related activities, the ALJ found that Plaintiff retained the RFC "to perform light work with limitations."  (Tr. at 13.)  In addition, the ALJ determined that Plaintiff could "stand for 30 minutes at a time for a total of 4 hours in an 8-hour workday."  (Tr. at 13, 15.)  The ALJ considered the medical records from July 1997 to January 2000, which stated that Plaintiff was unable to stand on his feet for an extended period of time but did not note specific time restrictions.  (Tr. at 130, 147, 180.)  The records included a July 1998 visit to Dr. Alford in which Dr. Alford noted that Plaintiff had no tenderness in his

hip.  (Tr. at 148.)  The records also included medical reports from August 1999 to May 2001, that cited the following findings: 1) "good vibrating sense" and "good point protective sense" (Tr. at 139); 2) no tenderness, masses, or displacement (Tr. at 122); and 3) normal balance and gait and sensory response (Tr. at 123.)  Although a December 2001 visit notes Plaintiff's complaint that he could not stand for more than 20 minutes, Dr. Alford, in his report, did not confirm Plaintiff's complaint.  (Tr. at 217.)  In addition, Plaintiff was able to stand on his heels and toes, squat and rise, and bend over without difficulty.  (Tr. at 219.)

There is no medical evidence in the record indicating that Plaintiff lacked the ability to "stand for 30 minutes at a time for a total of 4 hours in an 8-hour workday."  (Tr. at 13, 15.) Furthermore, the ALJ's finding that Plaintiff can stand for 30 minutes at a time for a total of 4 hours is in accordance with medical records noting that Plaintiff cannot stand for extended time periods because Plaintiff is allowed to take frequent breaks from standing.  The ALJ utilized all relevant evidence within the medical record to determine Plaintiff's RFC.  (Tr. at 13.)  Thus, substantial evidence supports the ALJ's conclusion that Plaintiff was able to perform a limited range of light work.

D.      *Issue Two: The Hypothetical Question*

Plaintiff alleges that the hypothetical question presented by the ALJ did not include all of Plaintiff's limitations.   (Pl. Br. at 7.)   Plaintiff contends that the hypothetical question is "defective and incomplete" because it did not include Plaintiff's testimony about his pain and limitations.  *Id*.  Plaintiff asserts that his testimony regarding his pain limitations is credible and would significantly interfere with or preclude him from performing the available work found by the VE.  *Id*.

The ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To establish that work exists for a claimant, the ALJ relies on medical-vocational guidelines or the testimony of a VE in response to a hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A hypothetical question posed by an ALJ must reasonably incorporate all the claimant's disabilities recognized by the ALJ, and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Bowling*, 36 F.3d at 436. However, the ALJ only needs to incorporate into the hypothetical question pain limitations that the ALJ finds are supported by the record. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite his impairment the claimant could perform available work. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001).

In this case, the ALJ posed the following the hypothetical question to the VE:

> Assume…an individual who is 56 years of age…has the following exertional limitations: assume this individual can sit for a maximum of one hour at a time. Assume this individual can sit for a total of six hours out of eight in the workday. Assume this individual can stand for a maximum of 30 minutes at a time. Assume this individual can stand for a total of four hours of eight in the workday. Assume this individual can walk for a maximum of 20 minutes at a time. Assume this individual can walk for a total of two hours of eight in the workday. Assume this individual can lift 20 pounds on an occasional basis, 10 pounds on a frequent basis; carry 20 pounds on an occasional basis, 10 pounds on a frequent basis. Assume this individual can only occasionally climb stairs and ladders. In your opinion, could an individual with those limitations perform any of the past relevant work you've described for the Claimant?

(Tr. at 38.)

In setting forth Plaintiff's RFC, the ALJ found that Plaintiff had the following limitations:

> He can sit for 1 hour at a time for a total of 6 hours in an 8-hour workday; stand 30 minutes at a time for a total of 4 hours in an 8-hour workday; and walk for 20 minutes at a time for a total of 2 hours in an 8-hour workday.  He can lift/carry 20 pounds occasionally and 10 pounds frequently.  He can perform work that involves climbing stairs on an occasional basis and work that involves handling and feeling on a frequent basis.

(Tr. at 13.)  In his findings, the ALJ determined that "Plaintiff's allegations regarding his limitations [were] not totally credible" because the allegations were not "reasonably related" to the "nature, onset, location, duration, frequency, radiation, and intensity of the pain and other symptoms experienced by [Plaintiff]."  (Tr. at 13, 15.)  The ALJ's decision to discredit some of Plaintiff's alleged limitations came after careful consideration of "all the medical opinions in the record regarding the severity of his impairments."  *Id*.  Because the ALJ found that some of the alleged limitations were not credible, the ALJ exercised his discretion to exclude them from the hypothetical question posed to the VE.  *Id*.  *See Morris*, 864 F.2d at 336 (holding that the ALJ has the discretion exclude limitations not supported by the medical record).

Accordingly, the hypothetical question posed by the ALJ reasonably incorporated all of the limitations recognized by the ALJ, and ALJ did not err.

**E.      *Issue Three: Transcriptional/Typographical Error***

Plaintiff alleges that, according to the transcript, the Vocational Expert said Plaintiff's limitations were compatible with full-time work while the tape says Plaintiff's limitations were not compatible with full-time work.  (Pl. Br. at 8.)  Plaintiff asserts that this error is further evidence that the ALJ's decision "is not supported by substantial evidence."  *Id*.

The Fifth Circuit has held that "procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Reversal is appropriate only when the substantial rights of a party have been affected.  *Id*.  When an error amounts to no more than a technical failing that does not influence the outcome of the case, it makes little sense to

reverse and remand. *Alejandro v. Barnhart*, 291 F.Supp. 2d 497, 516 (S.D. Tex. 2003). Remand is not appropriate unless the Plaintiff can show that he was prejudiced by the alleged error. *Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

The typographical errors of which Plaintiff complains appear on pages 40 and 41 of the record:

> Q. Okay. Now finally, if an individual was unable to appear regularly for work, that's a – assume the individual would miss up to three days or more a month on a regular basis. Would that affect your answer to the prior hypothetical questions?
>
> A. Yes, that's compatible with full-time employment for our purposes.
>
> Q. Okay. And the same would be true if the individual were required to take frequent unscheduled breaks during the day?
>
> A.  Yes.

(Df. Br. at 8.) Plaintiff submits that the correct response of the VE to the first question was that this would "not" be compatible with full-time work. Plaintiff further complains that the answer to the second question is also a typographical mistake because of the previous answer. He argues that taking frequent unscheduled breaks during the day would not be compatible with full-time work.

In this case, the ALJ first asked the VE two hypothetical questions to determine Plaintiff's RFC; she then asked two follow-up questions that included limitations not recognized by the ALJ in setting forth Plaintiff's RFC. The two questions at issue were the subsequent hypothetical questions that the ALJ asked the VE. (Tr. at 40-41.) As a result, the subsequent

hypothetical questions did not contribute to the ALJ's determination that Plaintiff had the RFC for a limited range of light work.  Because the ALJ did not rely on the alleged error when determining Plaintiff's RFC, the error is immaterial, and does not require the court to reverse and remand.

## III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED**, this 30th day of June, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE